UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-60241-CR-ALTMAN

**UNITED STATES**,

   *Plaintiff*,

v.

**LAZERO SIMEON**,

   *Defendant.*

_____/

# ORDER

Lazero Simeon, a career criminal with a long track record, got a sweetheart deal after stealing thousands of dollars from innocent people. Now, a little more than halfway through his sentence, he asks the Court to transfer him to home confinement. *See* Motion for Compassionate Release [ECF No. 44].[1] We deny his Motion for three reasons. *First*, he hasn't substantiated his claim that "extraordinary and compelling circumstances" justify his release. *Second*, the § 3553(a) factors weigh heavily against a reduction. *Third*, he has failed to show that he's no longer a danger to the community.

## THE FACTS

Simeon is 36 years old. *See* Response at 10. In 2019, he pled guilty to two counts of a four-count indictment. *See* Plea Agreement [ECF No. 24]. In doing so, he admitted that he and a co-conspirator had impersonated innocent people and contacted their banks to request new debit cards and Personal Identification Number (or "PIN") reminders.[2] *See* Factual Proffer [ECF No. 25] ¶ 1. The banks would then mail the debit cards and PIN reminders to the victims' home addresses, where

---

[1] The Government filed a timely response, *see* Response [ECF No. 45]; Simeon chose never to reply, *see* Docket; and the time to do so has passed, *see* S.D. FLA. L. R. 7(c)(1)(A).
[2] By requesting a PIN *reminder*—not a new PIN—the bank wouldn't alert the victim until it was too late. *Id.*

Simeon would steal them and use them to withdraw funds from the victims' bank accounts. *Id.* Simeon admitted to doing this (at least) three times to three separate victims—for a total loss of $15,000. *Id.* ¶¶ 3–9. In exchange for his guilty plea on Count I ("[u]sing [an] unauthorized access device to obtain goods of more than $1,000 in value") and Count II ("Aggravated Identity Theft"), the Government dismissed Counts III and IV. *See* Plea Agreement ¶¶ 3-9; *see* Indictment [ECF No. 14] at 2.

On December 18, 2019, this Court sentenced Simeon to 33 months in prison—9 months for Count I and 24 months for Count II, to run consecutively. *See* Judgment [ECF No. 97].[3] Simeon doesn't say what percentage of his sentence he's served. *See generally* Motion. Nor does he outline his projected release date. *See id.* Either way, as of this writing, he's been in custody since August 1, 2019, *see* Response at 11, and (according to the BOP) has a projected release date of August 19, 2022, *see* BUREAU OF PRISONS INMATE LOOKUP, *bop.gov/inmateloc/* (last accessed May 3, 2021). He thus has 14 months—or 42%—of his sentence remaining.

## ANALYSIS

Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should

---

[3] The sentence began only after Simeon finished a ten-month sentence in a separate case before Judge Middlebrooks. *See* Judgment at 2 ("This sentence is to run consecutively to the other sentence in Docket Number 08CR90057.").

determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*; *see United States v. Stuyvesant*, 454 F.Supp.3d 1236, 1238 (S.D. Fla. 2020) (applying the framework). The Court will discuss each of these four steps in turn.

### I.     Exhaustion of Administrative Rights to Appeal

This one's easy: The Government concedes that the BOP has denied Simeon's request for home confinement. *See* Response at 10. It even uses that BOP denial as a reason for rejecting Simeon's request here, arguing that the decision "reflects [the] BOP's expert judgment that it is not in the public interest to release Simeon in light of Simeon's young age (36), extensive criminal record and history of recidivism, medical history, and individual circumstances." *Id.* Simeon, in short, has exhausted his administrative rights to appeal.

### II.     18 U.S.C. § 3553

After considering the relevant § 3553 factors, this Court sentenced Simeon to 33 months in prison. *See* Judgment at 2. As part of his plea agreement, Simeon waived his right to appeal. *See* Plea Agreement ¶ 8. In his Motion, Simeon does not challenge this Court's application of the § 3553 factors,[4] and this Court sees no reason to alter its prior reasoning—especially in the absence of any new facts about Simeon or his crimes. *See generally* Motion. Thus, to the extent they are applicable, the § 3553 factors counsel against a reduction here.

---

[4] That's not entirely true. In a single sentence—devoid of any citation or argument—Simeon does say that, "upon consideration of the 3553(a) factors, this Court will find that the defendant is not a danger to the community and there exists no likelihood that the defendant will engage in criminal conduct if he were to be released." Motion at 6. But in this cursory, citationless reference to the § 3553 factors, Simeon never explains *why* the Court should reconsider the findings it made just one year ago. In other words, in December 2019, this Court determined that the § 3553 factors compelled a 33-month sentence. *See generally* Judgment. What's changed since then? Why should we reduce that sentence now? We don't know because Simeon never tells us. *Cf. Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it.").

3

### III.     18 U.S.C. § 3582

District Courts have "no inherent authority" to modify a prison sentence. *United States v. Diaz-Clark*, 292 F.3d 1310, 1315, 1319 (11th Cir. 2002). Instead, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." *United States v. Phillips*, 597 F.3d 1190, 1194–95 (11th Cir. 2010). The statute that governs sentence reductions for compassionate medical release provides, in pertinent part, as follows:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> >  (i)     extraordinary and compelling reasons warrant such a reduction; or
>
> >  (ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

18 U.S.C. § 3582(c)(1).

Because Simeon is not "at least 70 years of age," he does not qualify for release under § 3582(c)(1)(A)(ii). The viability of his request thus turns on the "extraordinary and compelling reasons"

test in § 3582(c)(1)(A)(i). But Section 3582 never describes the kinds of "[e]xtraordinary and compelling reasons" that might "warrant a reduction." Under 28 U.S.C. § 994, however, the United States Sentencing Commission (the "Commission") is authorized to "describe what should be considered extraordinary and compelling reasons for sentence reduction [under 18 U.S.C. § 3582]." 28 U.S.C. § 994(t). And the Commission has helpfully defined the contours of the test as follows:

> 1. **Extraordinary and Compelling Reasons.--**Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> **(A) Medical Condition of the Defendant.**
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is
>
> > (I) suffering from a serious physical or medical condition,
> >
> > (II) suffering from a serious functional or cognitive impairment, or
> >
> > (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> **(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt n.1.

The reference to "subdivision (2)" requires Simeon to show that he is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. §

1B1.13(2). And § 3142(g), in turn, instructs federal courts to consider the following factors when determining whether a defendant poses a danger to the safety of any other person or the community:

> **(g) Factors to be considered.--**The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2)  the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

Simeon bears the burden of establishing both that his circumstances qualify as "extraordinary and compelling reasons" and that he no longer represents a danger to any other person or the community. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *see also Cannon v. United States*, 2019 WL 5580233, at *2 (S.D. Ala. Oct. 29, 2019); *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019).

As a preliminary matter, Simeon cannot satisfy the "Age of the Defendant" test because he is 36 years old, not 65, and has not alleged any age-related decline. His request for relief, then, hinges on his ability to meet either of the two elements of the "Medical Condition of the Defendant" test. The first element requires him to show that he suffers from a "terminal illness." U.S.S.G. § 1B1.13 cmt n.1(1)(A)(i). The second requires him to establish that he suffers from any of three conditions "that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt n.1(1)(A)(ii).

Simeon says that he suffers from hypertension and epilepsy, and that, "if he catches COVID-19[,] it would clearly lead to his death." Motion at 5. In response, the Government points out that, in his PSI, Simeon advised that "he was diagnosed with high blood pressure in approximately 2007, which he controlled with an organic diet. There is absolutely no record of any request for assignment to a specific BOP medical facility in the case or a request for medical assistance." Response at 9. In fact, the Government continues, Simeon "has no medical restrictions, is fit for regular duty and cleared for food service, a designation reserved for only the healthier inmates." *Id.*[5] Simeon never rebuts these assertions, mostly because he chose not to reply—a failure that, since he bears the burden here, very much redounds to his detriment. *See Heromin*, 2019 WL 2411311, at *2.

Nevertheless, even accepting that Simeon suffers from these ailments, his Motion fails. To begin with, he never describes his conditions as (1) a "serious physical or medical condition," (2) "a serious functional or cognitive impairment," or (3) a part of his "deteriorating physical or mental health because of the aging process," as required by U.S.S.G. § 1B1.13 cmt n.1(1)(A)(ii). *See generally* Motion. Nor does he contend that these diseases qualify as "terminal" illnesses under U.S.S.G. § 1B1.13 cmt n.1(1)(A)(i). *See id.*

---

[5] The Government supports its arguments with reference to Simeon's medical records. *See* Medical Records [ECF No. 46] (filed under seal).

The Court acknowledges that the spread of COVID-19 has been pervasive and devastating. It has challenged our institutions, undermined Americans' ability to maintain their economic security, and altered the way people interact. More fundamentally, it goes without saying, the pandemic has resulted in widespread suffering. In the United States alone, more than 32,000,000 people have tested positive for the disease, and over 571,000 Americans have died from it. *See* CDC, *COVID Data Tracker*, available at https://covid.cdc.gov/covid-data-tracker/#cases_totalcases (last accessed Apr. 29, 2021).

But "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]" *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Additionally, "the BOP Director has not found COVID-19 alone to be a basis for compassionate release." *United States v. Harris*, 2020 WL 1969951, at *2 (M.D. Fla. Apr. 24, 2020) (citing *United States v. Eberthard*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)). The Court sees no reason to depart from the BOP's well-reasoned view on this question.

Because Simeon has not shown that his circumstances are either "compelling" or "extraordinary," his Motion must be **DENIED**.

### IV.     18 U.S.C. § 3142

Even if Simeon had shown compelling circumstances, his Motion would still be denied because he has failed to establish that he no longer poses a danger to his community. As the relevant Sentencing Guidelines provision makes clear, the "extraordinary and compelling reasons" test only applies if "the defendant meets the requirements of subdivision (2)"—that is, only if Simeon demonstrates that he no longer poses a threat to society, as defined by 18 U.S.C. § 3142.

In assessing dangerousness, Section 3142(g) requires the Court to consider: (1) "the nature and circumstances of the offense . . ., including whether the offense . . . involves . . . a controlled substance, firearm, explosive, or destructive device"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person, including . . . (A) the person's . . . past

8

conduct . . . [and] criminal history"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." Most of these factors weigh against Simeon.

*First*, the evidence against Simeon—as set out in the Factual Proffer—was both overwhelming and undisputed. *See* Factual Proffer.

*Second*, Simeon has an extensive criminal history. He admits that he has prior convictions for (1) sex trafficking of a minor, (2) "shooting or throwing into an occupied dwelling," (3) violating his sex offender registration requirements, and (4) possessing 28 grams of marijuana. Motion at 5.

*Third*, Simeon does not—and cannot—show that his release would pose no "danger to any person or the community." Simeon has a lengthy criminal history, which includes crimes against children, a violation of court-ordered registration requirements, and his conduct in this case (in which he stole thousands of dollars from innocent people). Simeon doesn't even bother to suggest that he's learned his lesson or that he's decided to conform his behavior to the law. On these facts, this Court will not release him early.

## V. Home Confinement

In the alternative, Simeon seeks placement in "house arrest, supervised release[,] or probation," *see* Motion at 2—a request the Government likewise opposes, *see* Response at 8.

The Court has no authority to direct the BOP to transfer a prisoner to home confinement. As the Eleventh Circuit has said, "[i]t is undisputed that the authority to place a prisoner in home confinement rests solely with the BOP rather than the judiciary. And while federal law permits district courts to make the type of recommendation the [the defendant] requested, any such recommendation would have been non-binding." *United States v. Groover*, ____ F. App'x ____, 2021 WL 391882, at *3 (11th Cir. Feb. 4, 2021).

The Court, it's true, could achieve the same result by simply reducing Simeon's sentence to time-served and then "impos[ing] a term of supervised release equal to the unserved time and order, as a condition of that supervised release, that the defendant be confined to his home." *United States v. Spencer*, 2020 WL 5498932, at *2 (6th Cir. Sept. 2, 2020); *United States v. Israel*, 2020 WL 3893987, at *9 (S.D. Fla. Jul 10, 2020) ("Although the Court does not have the authority to order a prisoner's release to home confinement, the Court does have the authority to reduce a defendant's sentence to time-served, impose a term of supervised release, and order home confinement as a condition of supervised release."). To do this, though, the Court would have to conclude that Simeon has carried his burden of showing that he's entitled to that reduction, which, for the reasons set out above, he's failed to do.

***

After a careful review of the parties' filings, the record, and the governing law, the Court hereby **ORDERS and ADJUDGES** that Simeon's Motion for Reduction in Sentence [ECF No. 44] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 3rd day of May 2021.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record